IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

| | | |
|---|---|---|
| DOUGLAS TAYLOR, | * | |
| ADC #127483 | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | No. 2:22-cv-00055-JJV |
| | * | |
| GARY KERSTEIN, Doctor, | * | |
| East Arkansas Regional Unit, *et al.* | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

**I.   PROCEDURAL HISTORY**

Douglas Taylor ("Plaintiff") is a prisoner in the East Arkansas Regional Unit of the Arkansas Department of Correction ("ADC"). He has filed a *pro se* Second Amended Complaint, pursuant to 42 U.S.C. § 1983, alleging Defendants ADC Director Dexter Payne, Warden Gaylon Lay, Deputy Warden Christopher Johnson, Deputy Warden Michael Richardson, and Major Kenyon Randle violated the Eighth Amendment by failing to provide him with sufficient out-of-cell exercise (Doc. 23.) Plaintiff brings these claims against Defendants in their official and individual capacities. And he seeks monetary damages as well as injunctive relief. All other Defendants were dismissed without prejudice during screening. (Doc. 22.) And the parties have consented to proceed before me. (Doc. 48.)

Defendants have filed a Motion for Summary Judgment. (Docs. 107-109, 113.) And Plaintiff has filed a Response. (Doc. 118.) After careful consideration and for the following reasons, the Motion is GRANTED.

**II.   SUMMARY JUDGMENT STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.*  (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of W. Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.    EXHAUSTED TIME PERIOD

In the pending Motion, Defendants have discussed events that happened from June 15, 2021, which is the first day mentioned in the Amended Complaint (Doc. 23 at 9), until July 31, 2022 (Doc. 108 at 6).  However, I have already ruled Plaintiff only exhausted the allegations raised in grievance EAM-21-2230.  (Doc. 57.)

In that grievance, which was filed on November 22, 2021, Plaintiff said he had not had

yard call in the last 60 days, which was from September 23, 2021 to November 22, 2021. (Doc. 50-5 at 3.) The ADC Director entered a final ruling on the merits on January 14, 2022. (*Id*. at 1.) It is impossible to determine from that final ruling if the ADC Director reviewed just the sixty-day period mentioned in the grievance or everything that happened until the final decision was rendered on January 14, 2022. Thus, giving Plaintiff the benefit of the doubt, I will consider the properly exhausted time period to be from September 23, 2021 until January 14, 2022. *See Jones v. Bock*, 549 U.S. 199, 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

## IV. FACTS

The following facts are undisputed. From September 23, 2021 until January 14, 2022, Plaintiff was placed in restrictive housing at the EARU due to disciplinary convictions. (Doc. 107-1 at 134-36; Doc. 107-2.) All inmates in restrictive housing live in single-person cells that are 7'6" x 11," for a total of 85.5 square feet. (Doc. 107-2; Doc. 107-9.) And Plaintiff had a window above his bed that was approximately 6 inches tall and 5 feet wide. (Doc. 107-1 at 52-53.) Inmates in restrictive housing receive all of their meals in their cells and stay there for most of the day. According to ADC Administrative Directive 2021-15, inmates in restrictive housing should receive a minimum of one hour of out-of-cell exercise per day, five days a week, "unless security or safety dictates otherwise." (Doc. 107-2 ; Doc. 107-3 at 4). And during that out-of-cell exercise time, prisoners may go outside for yard call "weather permitting." (*Id*.) Plaintiff says that, when he was allowed to go outside for yard call, he was put in a cage that was approximately 400 square feet, where he could walk around, breathe fresh air, and get sunlight.[1] (Doc. 107-1 at 44-45.)

---

[1] *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996) ("Requiring an inmate to exercise in an enclosed area is not itself a *per se* violation of the Eighth Amendment").

Prisoners in restrictive housing are also allowed out of their cells at least three times a week to shower and obtain barber services. (*Id*.) Due to security concerns, whenever inmates on restrictive housing are removed from their cells for any reason, they must be escorted by two officers and placed in hand and leg restraints. (*Id*.)

It is undisputed that during the COVID pandemic many officers quit, and thereafter, the EARU experienced a serious staff shortage. (Doc. 107-2.) As a result, the EARU was forced to prioritize staff to conduct sick call daily, shower call three times a week, and barber call once a month. (*Id*.) In addition, approximately half of the two yard call areas were under construction. (*Id*.; Doc. 107-1 at 31.) Thus, the opportunity for out-of-cell exercise was greatly reduced.

Specifically, during the exhausted time period, Plaintiff did not get out-of-cell exercise time from September 23, 2021 to October 7, 2021, which was 15 days. (Doc. 107-2 at 4-5; Doc. 107-6 at 45-73.) On October 8, 2021, Plaintiff was offered out-of-cell exercise time, but he refused. (Doc. 107-1 at 22; Doc. 107-2 at 4-5; Doc. 107-5 at 10.) Plaintiff did not get out-of-cell exercise time for the next 80 days between October 9, 2021 to December 27, 2021.[2] (Doc. 107-2 at 4-5; Doc. 107-6 at 77-215.) Plaintiff then was offered and used an hour of out-of-cell time on December 28, 2021. (Doc. 107-1 at 4-5; Doc. 107-2 at 4-5; Doc. 107-5 at 11). And he did not have any more out-of-cell exercise time for the next 17 days, which is when the exhausted time period for this lawsuit ended on January 14, 2022. (Doc. 107-2 at 4-5; Doc. 107-6 at 219-224, Doc. 107-7 at 1-28).

---

[2] Defendants are missing the yard call logs and incident reports for October 22 to 30, 2021. (Doc. 107-2.) Thus, for the purposes of summary judgment, I will presume Plaintiff did not receive out-of-cell exercise on those days.

V.   **ANALYSIS**

   A.   **Sovereign Immunity**

Defendants argue Plaintiff is barred from obtaining monetary damages from them in their official capacities. They are correct. Sovereign immunity precludes the recovery of monetary damages from state officials acting in their official capacities unless the state has waived its immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989*)*; *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016). It is undisputed that Defendants are state officials. And the State of Arkansas has not waived its Eleventh Amendment immunity. *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991). Thus, Plaintiff is barred from seeking monetary damages against Defendants in their official capacities.

But sovereign immunity does not prevent Plaintiff from obtaining monetary damages from Defendants in their personal capacities or injunctive relief from them in their official capacities. *Johnson v. Griffin*, 69 F.4th 506, 512 (8th Cir. 2023); *Larson v. Kempker,* 414 F.3d 936, 939-40 (8th Cir. 2005); *Murphy v. Arkansas,* 127 F.3d 750, 754 (8th Cir. 1997). Each will be discussed in the following sections.

   B.   **Qualified Immunity**

Qualified immunity bars the recovery of monetary damages from government officials in their personal capacities if the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021). Whether qualified immunity applies to the case at hand is a question of law, not fact, for the court to decide. *Kelsay v. Ernest,* 933 F.3d 975, 981 (8th Cir. 2019). Defendants are entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to Plaintiff, does not establish a

violation of his Eighth Amendment rights; or (2) the particular Eighth Amendment right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known that his or her actions were unlawful. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *MacKintrush v. Pulaski Cty. Sheriff's Dep't*, 987 F.3d 767, 770 (8th Cir. 2021). For the reasons explained herein, I conclude Defendants are entitled to qualified immunity on both prongs.

Because the "Constitution does not mandate comfortable prisons," only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Thus, to defeat qualified immunity and proceed to trial on his Eighth Amendment claim, Plaintiff must have evidence that: (1) objectively, the lack of out-of-cell exercise constituted a substantial risk of serious harm to his health or safety; and (2) subjectively, the Defendants were aware of but deliberately indifferent to the risk of harm posed by that condition. *See Hamner v. Burls,* 937 F.3d 1171, 1178 (8th Cir. 2019).

### 1. Objectively serious deprivation[3]

Neither the Eighth Circuit nor the United States Supreme Court has recognized a constitutional right to outdoor exercise, *i.e.,* yard call. *See Roos v. Clark*, No. 4:19-cv-00895-BRW-PSH, 2022 WL 4229981, at *10 (E.D. Ark. Aug. 26, 2022), *rec. adopted*, 2022 WL 4225965 (E.D. Ark. Sept. 13, 2022) (explaining the lack of Eighth Circuit authority and the split among the

---

[3] Plaintiff says he has satisfied the first requirement because it is undisputed he did not receive one hour of out-of-cell exercise a day, five days a week, as required by Admin. Reg. 2021-15. However, prisoners do not have a constitutional right to enforce compliance with internal rules or policies. *See Phillips*, 320 F.3d at 847; *Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997). And the policy says out-of-cell exercise time will be provided "unless security or safety dictates. As previously mentioned, the parties agree there was a staff shortage at that time. Thus, I find no merit to this argument.

other Circuits).

And there is no bright line rule as to when the denial of out-of-cell exercise (whether indoor or outdoor) rises to the level of a constitutional violation. *Compare Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) ("While there may be some time less than ninety days [without out-of-cell exercise opportunities] that violates the Eighth Amendment, we do not think that the thirty-seven day period in this instance does so"); *Rahman X. v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002) (inability to go outside for three months was not a constitutional violation because the prisoner had access to a day room with exercise equipment); *Dillard v. White*, No. 93-3171, 1994 WL 263174 (8th Cir. Jun. 16, 1994) (outdoor exercise only ten times in five months was not an Eighth Amendment violation); *with Ganahl v. Staley*, No. 4:16-cv-00015-BRW-JTR, 2017 WL 5505010 (E.D. Ark. Nov. 16, 2017), *rec. adopted,* 2017 WL 6045429 (E.D. Ark. Dec. 6, 2017) (denying qualified immunity when a pretrial detainee alleged he was denied out-of-cell exercise for thirteen months and could not exercise inside his cell for four months).

Thus, to determine whether a lack of exercise rises to the level of an objectively serious deprivation, a court must consider: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; (4) the duration of confinement; and (5) the extent of any physical injury. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). Giving Plaintiff the benefit of the doubt, the longest consecutive duration he went without out-of-cell exercise during the exhausted time period was 80 days, which is disturbing. However, Plaintiff testified during his deposition (Doc. 107-1 at 25-26) that he was able to exercise inside of his 85.5 square foot cell by doing sit-ups, push-ups, and burpees. *See Stewart v. Crawford*, No. 10-3734, 2011 WL 5105857 (8th Cir. Oct. 27, 2011) (ability to exercise inside the cell diminishes a prisoner's claim of denial of adequate exercise). And he was allowed out of his cell twelve times for medical

care, approximately three times a week for shower call, and monthly for barber service. Plaintiff says (Doc. 107-1 at 23-27, 67-68; Doc. 113 at 68-88) the lack of out-of-cell exercise caused him to have headaches, stomach problems, joint pain, weight loss, and a vitamin D deficiency. *See Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996) (a "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened"). But he has not offered any <u>evidence</u> to support that assertion.

To the contrary, the undisputed medical records establish that, during the exhausted time period, medical personnel visited Plaintiff at his cell multiple times a week, but he <u>never</u> complained that the lack of out-of-cell time was adversely affecting his health. (Doc. 113 at 68-88.) On several occasions, Plaintiff went to the infirmary for treatment of a "vibration throughout his body" for which medical providers could find no cause. (*Id.*) And he obtained health care for heartburn, food poisoning, lower abdominal pain, and chest pains while exercising. (*Id.*) Importantly, during his physical examinations medical providers noted Plaintiff ambulated well on his own and there is no indication his muscles had atrophied. (*Id.*) It is concerning that between September 2021 and January 2022, Plaintiff, who is 5'11," had a twenty-pound weight loss from 215 to 195 pounds. (*Id.*) However, Plaintiff has not offered any evidence demonstrating the weight loss was caused by a lack of out-of-cell exercise, as opposed to his documented stomach issues. *See Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010) (to avoid summary judgment "the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor"); *Schaub v. VonWald*, 638 F.3d 905, 921 (8th Cir. 2011) (a court may dismiss a claim "where the casual link" between the defendant's alleged conduct and the prisoner's injury "is so tenuous as to justify taking it from the trier of fact"); *Davis v. White*, 794 F.3d 1008, 1014 (8th Cir. 2015) (affirming summary judgment in § 1983 case when there was

no evidence defendant's conduct caused the plaintiff's injury).

Thus, after carefully considering the *Wishon* factors, I conclude Plaintiff's evidence falls short of an objectively serious deprivation. *See Terry v. Randle*, No. 2:22-cv-00084-JTK, 2023 WL 4132800 (E.D. Ark. June 22, 2023) (lack of out-of-cell exercise time for somewhere between sixty and ninety days for an EARU prisoner in restrictive housing was not an Eighth Amendment violation because the prisoner was allowed to leave his cell two to three times a week for shower call, and he was able to exercise inside his cell); *Raper v. Minors*, No. 4:22-CV-4025, 2022 WL 17352569 (W.D. Ark. Dec. 1, 2022), *aff'd,* 2023 WL 2857253 (8th Cir. Apr. 10, 2023) (no constitutional violation when pretrial detainee was only allowed to go outside three times in six months); *Perry v. McDaniel*, No. 4:20-cv-00052-JM-JJV, 2022 WL 952689 (E.D. Ark. Mar. 17, 2022) (lack of out-of-cell exercise time for sixty days was not an Eighth Amendment violation because the prisoner could have exercised inside his cell if he had removed some of his personal property, and he was allowed out of his cell thirty-two times during that time period for showering, visitation, barber call, and infirmary visits).

### 2.     Subjective Deliberate Indifference

As to the second element of an Eighth Amendment claim, the Eighth Circuit has explained that deliberate indifference is a "stringent standard of fault" that is much higher than negligence or even gross negligence. *Doe v. Flaherty*, 623 F.3d 577, 584 (8th Cir. 2010); *see also Hall v. Higgins*, 77 F.4th 1171, 1179 (8th Cir. 2023). Instead, it requires "proof of a reckless disregard of the known risk." *Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013) (emphasis added).

Plaintiff's deposition testimony (Doc. 107-1 at 74-99) about what each of the Defendants knew during the exhausted time period is vague, at best. *See Blair v. Bowersox,* 929 F.3d 981, 988–89 (8th Cir. 2019) (a prison official's "failure to alleviate a significant risk that he should have

perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment"); *Washington v. Denney*, 900 F.3d 549, 560 (8th Cir. 2018) (to establish deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

More importantly, the parties agree the decreased opportunity for out-of-cell exercise was due to an unavoidable staff shortage and reduced yard-call capacity, rather than callous indifference or a reckless disregard by Defendants. *See Washington*, 900 F.3d at 560 (8th Cir. 2018) ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted"). And as mentioned in Defendant Randle's Declaration (Doc. 107-2), they were making efforts to address the situation. *See also Terry*, 2023 WL 4132800 (documenting, after holding an evidentiary hearing, the efforts prison officials were undertaking to address the staffing shortage and increase out-of-cell exercise opportunities for EARU prisoners in restrictive housing); *Hamner v. Lay*, No. 2:22-cv-76-DPM-ERE, 2022 WL 17490564 (E.D. Ark. Aug. 12, 2022), *rec. adopted,* 2022 WL 17487753 (E.D. Ark. Dec. 7, 2022) (denying preliminary injunctive relief to a prisoner in restrictive housing at the EARU because prison officials were not being deliberately indifferent to the lack of out-of-cell time that was caused by a severe staff shortage and reduced yard call area).

For these reasons, I conclude the evidence viewed in the light most favorable to Plaintiff does not establish an Eighth Amendment violation. And, even if there was sufficient evidence, I find Defendants are also entitled to qualified immunity under the second prong because the law was not clearly established that a reduction of out-of-cell exercise for the duration and under the circumstances presented in this case would be an Eighth Amendment violation.

### C. Injunctive Relief

Because Plaintiff does not have sufficient evidence of an Eighth Amendment violation, he is also unable to obtain injunctive relief. Thus, summary judgment on all requested forms of relief is appropriate. That being said, my conclusions here are based on the evidence and circumstances presented here and law as it applies in this circuit. I am sympathetic to Plaintiff's claims. But the law requires dismissal.

## IV. CONCLUSION

IT IS, THEREFORE, ORDERED that:

1. Defendants' Motion for Summary Judgment (Doc. 107) is GRANTED.

2. Plaintiff's Eighth Amendment claim against Defendants Payne, Lay, Johnson, Richardson, and Randle is DISMISSED with prejudice, and this case is CLOSED.

3. I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Memorandum and Order would not be taken in good faith.

DATED this 12th day of January 2024.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE